We will hear argument first this morning in Case 21-328, Morgan v. Sundance. Ms. Gilbride? Mr. Chief Justice, and may it please the Court, Section 2 of the Federal Arbitration Act requires that an agreement to arbitrate be enforced unless a generally applicable contract offense renders it unenforceable. But the Eighth Circuit didn't apply a generally applicable contract defense here. It applied an arbitration-specific waiver defense that requires the person asserting waiver to prove prejudice, even though prejudice isn't required to establish waiver of other contractual rights in Iowa. That's what the Eighth Circuit did wrong, and that's why we're here. But there's been a lot of discussion in the briefs about Section 3 and default, so I wanted to quickly explain what the Eighth Circuit should have done instead. First, it should have assessed Robin Morgan's waiver defense under generally applicable Iowa law to determine if there was an enforceable contract on which the procedural provisions of the FAA could operate. If it found waiver under state law, that would have been the end of the inquiry. If it found no waiver, meaning that there was still a live contract for Sundance to enforce, then because Sundance sought a stay under Section 3, the court would still have had to assess if Sundance's actions were in default in proceeding with the arbitration. So whether Sundance's actions constituted default is a secondary question, not a replacement for the First Order waiver inquiry. And even if we get to default here, nothing in that term connotes prejudice either, for default, like waiver, is a unilateral concept that focuses on the defaulting party's failure to perform an obligation. Sundance intentionally relinquished its contractual arbitration rights by asking a federal judge to dismiss this case and filing an answer that didn't mention arbitration. Those actions should have been sufficient for a finding of waiver, and the same actions placed Sundance in default within the meaning of Section 3. Prejudice has no part to play in either of these inquiries, and the Eighth Circuit was wrong to require it. I welcome the court's question. Because— Ms. Dilbright, what if the standards for waiver under state law are different with respect to arbitration and other provisions in the contract? Then that would violate the Federal Arbitration Act, right? Well, there are some states that have, as the majority of federal circuits have, that have endorsed an arbitration-specific waiver rule. That's true, Your Honor. And the states that have done that by having a waiver defense that draws its essence from the fact that an agreement to arbitrate is at issue, they are not complying with the equal treatment principle that is at the core of the Federal Arbitration Act that's codified at Section 2. Well, then, don't you have to analyze precisely why waiver is being applied in each case to see if it is the same? In other words, it would seem to be a somewhat complicated inquiry if there's occasional exceptions to whether it's waiver because you haven't asked for punitive damages or it's waiver in other situations. Each situation would seem to be unique. Unless, I suppose, the state had a rule that any slight difference, that sort of perfect performance constitutes a waiver. You know, you're one minute late for the argument. Everything's waived. It would seem to be it has to be kind of an issue-by-issue inquiry. Yes, Your Honor. Waiver, as a matter of common law, when you're looking at contractual rights, which is what we're looking at here, is a fact-dependent inquiry. It's assessed on the totality of the circumstances. And what the Eighth Circuit did wrong here, as many other states that have adopted an arbitration-specific test, is that they added the prejudice requirement solely when arbitration agreements are at issue. But if there are different standards of waiver, if they're generally applicable, if, as this Court said in Perry v. Thomas, it was a body of law that arose to govern the validity, revocability, and enforceability of contracts generally, then that's what the state should apply. And that's why it would be proper here for the Court to remand to the Eighth Circuit to apply Iowa's generally applicable waiver doctrines, which was never done here. Both parties and the lower courts assessed the waiver inquiry under federal law, under governing Eighth Circuit precedent, which requires prejudice based on a misapplication of the FAA, erroneously believing that the FAA requires prejudice findings specific to the arbitration context. Ms. Gilbride, could I assume for a moment that we should think about this as a Section 3 case? And then, if that's the way we think about it, this phrase, in default in proceeding with such arbitration, does that incorporate state contract law principles? Well, Justice Kagan, if the phrase, in default in proceeding, is referring to default in proceeding under the contract, then we would submit that state contract law principles should be applied, because this Court said in First Options of Chicago, in Arthur Anderson v. Carlyle, that when you're looking at contract questions, whether it's contract interpretation, whether the agreement was formed, whether third parties can enforce the contract, you look to state contract law. But if what that phrase at the end of Section 3 means is a statutory default, in other words, that the party was in default in proceeding with their rights under the FAA by requesting a stay too late in the case, then that is something that the Court could analyze under federal common law, because you're putting content to what that procedural provision of Section 3 requires. And do you have a view as to which of those two is the right way to look at it? I think that if you put Section 3 alongside Section 4, there are some differences. Now, certainly, Sundance seems to take the position that it's looking at default under the contract. All of their cases talk about contractual defaults, and if the contract has a set time limit, you do one thing, but if it doesn't, they say you assert prejudice, which is not found in the contractual default cases. I think that there's reason to think that Section 4 is talking about defaults in proceeding under the contract. If you look at Section 4, it says if a party has a failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration, and then later on in Section 4, you talk about if the party has failed to comply therewith, meaning failed to comply with the agreement for arbitration, and the next time default is mentioned, it is the failure, neglect, or refusal to perform the same, again, perform the agreement for arbitration. Section 3 doesn't refer to the contract in that way. When it says in default in proceeding, it says in default in proceeding with such arbitration. So that could denote that an arbitration has already commenced and that the party seeking a stay has engaged in some dilatory tactics with respect to the arbitration itself. That was the case in the New Jersey Supreme Court case of Roach v. BM Motoring, which we cited in our reply brief, where the plaintiff had initiated arbitration and the defendant refused to pay their portion of the arbitration fees, which caused the arbitration to stall, and that conduct could constitute default in proceeding because it delayed the arbitration. Ms. Gilbride, what about this provision from the American Arbitration Association that was incorporated into your contract, that this is a matter of substantive contract law, which says that no judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate. Why doesn't that do more work if the right place to look here is substantive contract law? Well, Justice Barrett, because the first place to look is Section 2, and as a matter of state contract law, which is the first step of the two-step inquiry, then if an ordinary no waiver provision could be waived by the party's subsequent contact, then there would be a waiver under state law and you never get to Section 3. And that's the case with respect to the sort of language that you're mentioning with respect to the American Arbitration Association. Non-arbitration or non-waiver provisions, I should say, are routinely waived by subsequent conduct. We cite some cases to that effect in our reply brief. It's established in Williston, Section 3936, Corbin, Section 733. So according to that sort of black letter law about no waiver provisions, you would never have occasion to get to Section 3 if the conduct that Sundance engages in What's the point of including them then? Well, the American Arbitration Association may want the parties to do some of the sorts of things that Sundance talked about in terms of defensive actions at the early stages in court. I can't speak for why the AAA put that language in their contracts, but it's been in their standard rules for many years. And many federal courts, including federal courts that subscribe to the erroneous view of the FAA that requires prejudice, have looked at that language and said, we're going to find a waiver notwithstanding this language. So whatever the AAA's reason for including it, it hasn't stopped courts from finding waiver if the party's conduct rose to the level of an intentional relinquishment of their right to arbitrate. The mistake that those courts have made, even though they didn't rely on that AAA rule language, was that they analyzed the question under federal law exclusively instead of first looking at whether there had been a waiver under generally applicable contract principles of state law. Basically, they continued this mistake that the Eighth Circuit made here of applying an arbitration-specific waiver defense instead of a generally applicable one. And that's why this court should remand for the Eighth Circuit to apply the correct generally applicable contract test in the first instance. I see the remand point. I'll tell you, I just want to know what I should read. I used to have nightmares about teaching a class, and in my nightmare, someone in the class would ask me something, and I'd have to go into a long disquisition on something I didn't know. So I've written down here laches, in default, forfeiture, waiver, estoppel, and there are probably about six or seven others which are primarily contract, or not entirely, but, and state law questions. And I know very little about them. And suddenly this court, writing a treatise on that, could get laws in many, many places really mixed up because judges sometimes put the wrong words, if there are wrong words. And so what have you read that will prevent me from getting into this nightmare? That is to say, what of all the things you've read, and it's clear that both of you have read an enormous amount, what would you recommend to me to try to get these different concepts straight in my mind? That's a good question. There are a lot of concepts here, and I think, you know, the reason that we put two large block quotes in our opening brief about early 20th century cases distinguishing between waiver and estoppel, one from the Supreme Judicial Court of Maine, and one from the Supreme Court of Oklahoma, is that I think those two opinions do a very good job of delineating between those concepts, that waiver requires an intentional relinquishment, that's what distinguishes waiver, and estoppel requires prejudice. Often the two can be present in the same case, but what distinguishes them, and when as here, you know, Ms. Morgan argued waiver and she did not argue estoppel, what should distinguish the doctrine is she would need to prove that Sundance did something intentional, that it did actions, committed actions, that would lead to an inference that it did not intend to rely on its arbitration right, but what she would not have to prove is that she was harmed or prejudiced by Sundance's actions. That is the key distinguishing feature between waiver and estoppel. Latches is a doctrine that focuses mostly on the delay of asserting a right, not inconsistent actions by the waiving party. Your argument now is that this is governed by state law, not by federal law, is that right? It's governed by both, Justice Alito, because it would first be, the first question is, was there a waiver because Ms. Morgan argued waiver? Now if she hadn't argued waiver, that wasn't present in the case. Now that, because it is, has to be argued under state law. If she hadn't, but because Sundance sought a stay under Section 3, then the court has an independent obligation under Section 3 to assess whether the applicant for that stay was in default in proceeding with the arbitration. So that's where you get to the Section 3 question. To Justice Kagan's question, that could be state law too if it's only about rights under the contract, but if it's about rights under the statute, if it's about what does the FAA require for someone to be in default in proceeding, then that would be a federal question. Well, all the courts of appeals, as I understand it, have applied federal common law here, is that right? Yes. So most courts have looked at this under Section 3 because parties are seeking stays under Section 3. So it's not, you know, incomprehensible as to why the courts start looking at this as a Section 3 question when they're assessing a motion that someone filed under Section 3. And you now want the case to be remanded and decided under Iowa law, am I right? That's correct. We want the 8th Circuit to have an opportunity to apply generally applicable Iowa contract law. And that also may require the 8th Circuit, and this court may want to give instructions to this effect, to certify to the Iowa Supreme Court to clarify Iowa law in this area, because Iowa, like many other states, has been tainted by the same misapprehension of what the FAA requires. You have a strong argument, and you might be right, but it would represent a sea change, would it not? It would require all the courts of appeals to approach this question differently from the way they have. Is that correct? Well, what it would do, I think, which would be in some ways a sea change, but in some ways continue a trend, it would follow what this court has done in Arthur Anderson v. Carlisle and First Options of Chicago, which is to say questions of contract interpretation, contract defenses, are analyzed under state law. Yeah, no, I understand that. And as I said, you have a cogent argument, but it would represent a significant change. And so this takes me back to the Chief Justice's initial question. If we are going to send the courts of appeals, district courts, off looking at state law on this issue, are they going to find that state law generally has arbitration-specific rules about waiver, or are they going to find that state law generally treats the waiver of arbitration exactly the same as the waiver of other contract defenses? So let me give you three situations and ask you to tell me whether they involve an arbitration-specific rule. The first one involves a state that has a rule, a procedure that says that arbitration has to be asserted in the answer, but it does not provide that with respect to any other contract defense. And the second situation is similar to the first, but the rule also includes some but not all other contract defenses. And the third involves a situation where there isn't a state rule on this issue at all, but if you look at state case law, the state case law makes the waiver of arbitration a lot easier than the waiver of other contract defenses. So are those arbitration-specific rules or not? I would say the first and the third are arbitration-specific because, as I understood, the third rule is a judicial sort of consensus in which arbitration waiver is treated differently, is a different standard or a different test than waiver of other contractual rights, and the first one would require an arbitration defense to be stated in the answer, setting it apart from all other defenses. And so if you look at footnote 9 of Perry v. Thomas, that says state law, whether of legislative or judicial origin, so that's why your first and third will be treated the same, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. Continuing to quote, a state law principle that derives its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of Section 2. So I think the first and third rules you've described would be arbitration-specific. The second, because some other contracts are treated the way arbitration is treated, would be a closer question, and I think the state court should have the opportunity to look at that in the first instance, but it might not be arbitration-specific because other contracts are treated similarly. Ms. Gilbride? Ms. Gilbride, I'm a little confused by the answer you gave Justice Kagan and Justice Alito. Justice Kagan limited her question to say, if I believe Section 3 is at issue, the at fault, then tell me why you win. I don't know how you win when you say that federal law controls Section 3. Your entire answer to her and your direct answer to Justice Alito is, if you read Section 3 in light of Section 4, federal law controls. So how do we get from federal law to state law? Your answer seemed to suggest to me that you're saying federal law, common law. So please get me out of this box that you put me in. I will try, Justice Sotomayor. So the first question is under state law, particularly if, as here, a waiver defense has been interposed by one of the parties. That's a generally applicable contract defense. It should be analyzed under state law. If the party who wants to belatedly arbitrate, even though they've acted inconsistently in the past, they file the motion under Section 3, that has two inquiries. The first is, is the agreement or the issue referable to arbitration under an agreement in writing? That, again, I think contains a state law inquiry. How would you know if it's referable to arbitration under an agreement in writing other than looking to state contract principles, including waiver, if applicable? But then the second question under Section 3 is the one I was speaking with Justice Kagan about, and that, I think, is a separate independent obligation that Congress placed on the court reviewing a Section 3 stay application. It doesn't matter if anyone's pled waiver at all. Is the applicant for the stay in default in proceeding with the arbitration? And if that is a statutory inquiry, if the type of default Congress was talking about was taking too long, being dilatory in proceeding with arbitration, inconsistent with the FAA's intent of moving parties, as this court said in Concepcion, to facilitate streamlined procedures to getting into the arbitration proceeding quickly, that should be analyzed under federal law. I'm sorry for interrupting you, but I still don't understand. Are you suggesting there's a default under Section 2, that there's a waiver under Section 2 that we look at first? If there's a waiver, we enforce that? You're shaking your head yes. But even if there's no state waiver, we then look to Section 3 and make up a federal waiver as well? That is exactly correct, Justice Sotomayor. So under Section 3, the prejudice that the lower courts have developed as common law, why doesn't that stand? Because nothing in the text of Section 3 or in the purposes and structure of the FAA can note a prejudice requirement as part of any federal law standard. If this court wants to reach that question, all this court needs to do at the first step is say this should have been decided under state law because there was a waiver defense here. Ms. Morgan argued waiver, but it was analyzed incorrectly by the Eighth Circuit. Now, some of my colleagues seem troubled by the fact that states differ in how they define waiver. I'm troubled by the fact that the circuits define prejudice in different ways. So there's variation no matter what we do. Your brief has not attacked the prejudice finding that the court below did because you want to assert on the legal question. I understand that. But can you tell us how, if we disagreed with you, how we could reach that second question if we were so disposed? Because there is a wide variety in defining prejudice. Yes, and that is certainly a problem, one of many problems, in addition to the fact that it's atextual, with the prejudice requirement that many federal courts and some state courts require is that it's not uniform. They're all over the place, and even in the Eighth Circuit, several years before this case, another case, Messina v. North Central Distributing involving an eight-month delay and a motion to transfer, very similar facts here, came out the other way, and the court did find prejudice. So it's not a symmetrical or uniform standard currently. And what I would suggest that the court do is, again, remand for the Eighth Circuit to apply the correct standard. But if the court wants to put content into what Section 3's default provision means, it shouldn't be a prejudice requirement. There's no basis for that. But if you look at the structure of the Act, there are reasons to think that Congress wanted parties to proceed quickly. And so a presumption that a party should raise their defense of arbitration by the time they file their first responsive pleading, by the time of their answer, or before their answer if they file a motion, that would be presumptively enough to get someone not to be in default in proceeding. That wouldn't preclude someone with, what, exceptional circumstances, some change in the law, some new facts that arose, to argue that to the court, but it would be their burden to prove they were not in default. Gilbride, I just have one last question. It, I think, gets to what you were talking about most recently. I would say or suggest that the one thing that your position will do is increase the complexity and delay associated with arbitration proceedings. You've added a presumption to sort of help address that. Certification was mentioned earlier, which in my experience, our experience, I think can contribute to a great deal of delay. And, of course, the whole point of the Federal Arbitration Act, or at least the significant point, was to expedite disputes. Yet you're, it seems to me, creating a whole new battleground before you even get to arbitration about whether or not there's been waiver under state law. And I wonder if the cost of that, I mean, if that's what the law requires, it requires, but I think we should take into account that that seems quite contrary to the policy behind the FAA. I appreciate the concern, but I would respectfully submit that the status quo in which courts are requiring prejudice actually increases delay and increases the sort of skirmishing in court that, you know, before anyone resorts to the arbitral forum, that the FAA was designed to eliminate. So, for example, the Fourth Circuit's decision in MicroStrategy v. Larisha, in that case, the employer had sued the plaintiff or the employee two different times, once in federal court, once in state court. Discovery had been taken. The employer even took the employee's deposition in the previous litigation. And then when the employee filed a federal lawsuit asserting retaliation for her activities at the EEOC, then the employer invoked the arbitration agreement for the first time, after having taken all this discovery, filing over 50 motions in three previous lawsuits. And the Fourth Circuit said because she couldn't prove that she was prejudiced, you know, all of that litigation activity was not enough to constitute waiver. So I don't think that the current state of affairs is bringing the quick resolution and arbitration that we agree is the FAA's intent. Justice Breyer? I've just gotten worried now because of the questions that Chief Justice and Justice Alito asked. You have a very logical framework. I have no doubt as to its logic, and there's lots to support it. But what's worrying me is this is not an esoteric situation, I don't think. I mean, you had an arbitration agreement. So what you decided to do is bring a lawsuit. And nobody said anything further for quite a while. And then finally the other side said let's go to arbitration. And were they too late? Now that kind of situation, I bet, arises fairly frequently. Okay. Now we're starting to create a matrix of rules through your logic. It is so complicated that it's at least hard for a layperson like me in this area to understand. And what's worrying me is that my instinctive answer, which you'll tell me is wrong if it's wrong, is it depends. The first thing, if I were a judge, I'd sit there and I'd want to know how clear were they if they got up and said I never want to go to arbitration. Hey, I'm not going to be too worried about prejudice. Look what they said. On the other hand, if it's sort of a vague thing, I might begin to think, hey, nobody's hurt. Make them go to arbitration. Nobody's hurt, by the contrary. Or I might think they had good reason for delaying. They thought you weren't hearing rightly in the first place. There was another suit you should have been in, not this one. So it's hardly surprising they did this first. In other words, what I'm doing is showing you, as you well know, that there are a lot of different situations, a lot of different reasons, and so at this point, having thought of that out of these questions and not wanting to muck everything up, what do I do? What you should do, Justice Breyer, is remand for this to be decided under state law because courts deal with these questions. They're complicated. I agree with you. It's fact-intensive. I agree with you. But courts deal with fact-intensive, complicated questions all the time. I mean, some of the very things, like this court said in first session. No, we'll send it back to the Iowa State courts. Of course, the person who knows about it is the judge in the federal court because he's seen everything that's going on. So now we send it to a new judge who knows nothing about it. And we use some cases in Iowa that were done in other situations that happen to use the word waiver. That is a possible answer. I'm not saying it isn't. I'm making fun of it, but I'm not right to make fun of it because it is a possible answer. Well, I don't think it's any more complicated than questions about, you know, who's bound by the contract or whether a particular dispute falls within the terms of the contract. And state courts and federal courts applying state law answer those questions even within the parameters of the FAA all the time without, you know, anything seeming to have ground to a halt or caused undue chaos in the lower courts. Justice Alito, anything further? Justice Sotomayor? Justice Breyer referred to the trial court deciding this issue. Did the trial court in this case find waiver? Yes. It was the circuit who reversed that finding. That's correct, Your Honor. Thank you. Justice Kagan? Ms. Gilbride, if Iowa law requires a showing of prejudice before finding waiver, you lose. Is that correct? If Iowa finds prejudice as a generally applicable matter for all contracts, yes. Then under the equal treatment principle, if arbitration is treated the same as any other contract, including a prejudice requirement, that would be consistent with the FAA. We still have the Section 3 question that we discussed earlier. And similarly, if as a general matter, not arbitration specific, but if as a general matter, Iowa law allows a party to cure their waiver, you also lose? If the circumstances are met for that here. I mean, there's been a lot of discussion about executory contracts and retraction, and we talked about mutual rescission, you know, by consent. But if the Iowa court, applying generally applicable contract rules, finds that there was a retraction or a cure here, as long as it's not arbitration specific, that would be the end of the inquiry, and we would then move to Section 3. Do you have a view as to what Iowa law says about those issues? Do they have a general rule about waiver or about curing waiver that would apply here? Well, you know, there's been some cases about executory contracts towards periodic performance that Sundance cited in their brief. So periodic performance when you have an installment contract, you have to make deliveries every month or every year. And if you accepted late payments in the past, you can still insist on timely payments in the future. Our position is that this is not that sort of a periodic performance situation. We're talking about a one-time dispute arose, and how did the parties respond once that dispute arose? We think the more appropriate way to frame that under existing Iowa law is the O'Dell case about rescission of the contract and creation of a new contract by mutual consent. Ms. Morgan chose to go to court, and Sundance acquiesced in her choice by filing dispositive motions and otherwise engaging in the litigation process in court. Justice Gorsuch. Ms. Gilbride, I understand your argument that all arbitration contracts are subject to state law defenses that are generally applicable under Section 3. But I also take Justice Alito's point that's been echoed here that all the courts of appeals have seemed to treat this as not a question of state law but of federal law. And for my money, I can see why. Because Section 6 says that motions to arbitrate are to be treated like any other motion in federal court and are subject to the rules of federal jurisdiction, federal courts. And as I read the cases, I see the courts of appeals trying to apply usual principles of waiver or forfeiture that this court has announced for use in federal proceedings. So while you might have a state law defense, don't you also have a federal law argument and couldn't we simply say that part of federal law, to the extent it includes waiver, doesn't generally require prejudice under this court's teachings? It's usually just an intentional relinquishment of a known right.  Or maybe you have, and I've misunderstood today's proceedings, which seem to have focused on Section 3. Can you help me out? Sure, I can try, Justice Gorsuch. So this court could take default under Section 3 to be analogous to waiver? No, no, no, no, no, no. That's not what I'm suggesting. What I'm suggesting is why don't we just put that Section 3 question aside? Yes, you may have state contract defenses, whatever they may be. The Lord only knows what Iowa state law defenses are with respect. I don't know. I'm not an expert. But one thing I do know is federal procedural law, which is governed and seems to control under Section 6. And it seems to be what the Eighth Circuit was relying on, federal procedural law. It seems to be what all the other federal courts of appeals are relying on, too. And I can say, I think with some degree of certainty, that waiver, whatever else it requires in federal court, our normal procedure with respect to motions doesn't require proof of prejudice. And to the extent that that was the Eighth Circuit's understanding, to the extent it was relying on Section 6 not saying that's right, to the extent it was talking about federal procedure, which I think it was, we can say that that doesn't exist, and reserving all of the Section 3 questions and not having to address them. I understand your question, and I understand your question is about Section 6, but I do want to just quote some language from Arthur Anderson that talks about Section 3, and I think it is responsive. Arthur Anderson said in discussing the interplay between Section 2 and Section 3, Section 3 allows litigants already in federal court to invoke agreements made enforceable by Section 2. Neither Section 2 nor Section 3 purports to alter background principles of state contract law, and then going on later in the opinion, state law is applicable to determine which contracts are binding under Section 2 and enforceable under Section 3. Do you have anything else you want to say about Section 6? Yeah, Section 6 is just talking about the manner in which those procedural provisions, motions under Section 3, you can't, you know, you don't bring a motion under Section 2 unless you're arguing Section 2 in state court. You're using one of those procedural provisions, what Rent-A-Center calls the procedural provisions for carrying out Section 2's substantive mandate, and that's why the substantive mandate is applying state contract law. Now, I'm not saying there isn't a place for looking at the federal rules. That could be a gap filler if you're trying to figure out what default means under Section 3. Looking at rules like Rule 12c or 12b-3 for venue, for example, could be a gap filler when we're trying to figure out what default means. But I do think you have to start with state contract law because that's the substantive provision. Very good. Thank you. Justice Carabino? Ms. Kilbride, your concern is the prejudice requirement, correct? Yes, it's an atextual requirement that is arbitration-specific, and courts are applying it out of a misguided sense of what the FAA requires. Okay, and then focusing on the FAA, if I want to focus on Section 3 rather than the state law approach, the word default, what is wrong with what the D.C. Circuit did in the Zuckerman-Spader opinion? And what it said was under Section 3 that there should be a presumption of forfeiture if you have not raised arbitration in the first response of pleading. I think that is a good model for this Court to look to. You know, the D.C. Circuit did go on to talk about prejudice later in that opinion, but the notion that there is a presumptive default if the party does not include arbitration by the time of its answer or in a pre-answer filing, I think is consistent with the rule we've proposed here today. Right, and then on prejudice, what I understood the D.C. Circuit to say in that case was that the reason that they said there's a presumption is because usually if you haven't raised it in the first response of pleading, there will be prejudice to the other side in the form of expenditures on litigation or the discovery process will prejudice the other side to some extent, and that's why, as I read that opinion, they said it has to be raised in the first response of pleading. And just to the point of simplicity, I'm just wondering why that isn't an approach that is consistent with your objective of limiting, if not eliminating, the prejudice while keeping it very simple in terms of it's all under Section 3 default. Two responses to that, Justice Kavanaugh. First of all, to the extent that the D.C. Circuit is looking at prejudice or sort of indicting that if not asserted by that point, prejudice would likely result, that troubles me less than what most federal courts are doing, which is requiring the party alleging waiver to prove prejudice. And that is not something that should be, you know, at a minimum, I would want this court to clarify that no one should have to prove prejudice as part of a waiver finding. And my second response would just be that while I agree that as a federal standard pegged to Section 3 that raising it by the time of the first response of pleading is appropriate, I don't think the D.C. Circuit is correct to step over the Section 2 part of the analysis of looking at this as a contract question. I mean, what happens if someone doesn't file a motion under Section 3? They only file under Section 4 or the cases in state court. Relying exclusively on Section 3 is very under-inclusive to the circumstances in which these waiver issues arise. Thank you. Justice Barrett? Ms. Gilbride, I have a question about the bucket that we put this in. Everybody's talking about waiver, but waiver is used to mean a lot of different things, and it seems to me like this case would be more properly considered an estoppel or latches, that they sat on their right too long or didn't assert the defense soon enough, and prejudice would be part of it under state law if we looked at those other kinds of defenses like estoppel and latches, would it not? Well, there are some states that have merged the doctrines of waiver and estoppel. For example, we cite one in footnote 11 of our opening brief. New Mexico does that. Sundance also cites a Vermont Supreme Court case that does that. So if a state treats waiver and estoppel as merged for generally applicable contract defenses but is not involving arbitration, then that's what the state does, and we would apply the same rules to an arbitration agreement. But the problem is that many states have diverged, gone two separate ways. They treat waiver and estoppel as distinct in other contractual contexts not involving arbitration, but if it's an arbitration agreement, they merge them together, and that's what violates Section 2 of the FAA. But you would lose if it were estoppel, right? Because doesn't Iowa law require prejudice? Yes. Prejudice is required in every state, as far as I know, for estoppel. I think, you know, Ms. Morgan certainly argued below that she was prejudiced here. We haven't contested that before this court, but certainly it was briefed below that she was prejudiced. But she did not argue estoppel specifically. She argued waiver, and she should have the opportunity to argue waiver again under generally applicable Iowa law. Thank you. Thank you, Ms. Gilbride. Mr. Clement? Mr. Chief Justice, and may it please the Court, nothing in the FAA or state law supports petitioners' proposed rule that a motion to stay litigation in favor of agreed-upon arbitration must be filed as expeditiously as possible or lost forever. To the contrary, Section 3 of the FAA directs that courts shall grant such motions unless the stay applicant is in default. Similarly, under all relevant state law doctrines, one has to show prejudice before a contractual right is lost because you litigated or waited too long to assert it. The most straightforward way to affirm the decision below is to apply Section 3 and its stay-absent-default direction. My client Sundance moved for a motion under Section 3, and it is not in violation of any contractual deadline, any court rule, or any other legal obligation. The parties here agreed to arbitrate instead of going to court. That agreement did not put a deadline on a party asserting a right to arbitrate if the other side broke the promise, and it incorporated rules that warn against a finding of a waiver because of litigation conduct. In this circumstance, simply not filing a motion as expeditiously as possible without violating a court rule or imposing prejudice on the other side does not result in a default, and under those circumstances, Section 3 directs courts shall grant the motion. Under state law, the same result would follow. All state law doctrines require prejudice in these circumstances. Courts are loose in the way that they go about using the term waiver, but the kind of strict, no-prejudice form of waiver on which petitioners' whole argument depends is limited to true waiver, the intentional relinquishment of a known right. That's not what is at issue here, and what is at issue is simply not asserting a right soon enough. That is the office of estoppel and latches which require prejudice, and even in the case of a true waiver, you can retract in the absence of prejudice. I welcome the Court's questions. Well, I mean, so you wait until in a case that you lose to the denial of cert and say at that time, no, wait a minute, we're supposed to, we have the right to arbitrate, and we want to go to arbitration. Waiver plays no role in evaluating that situation at all? Well, I think that there would be, in a sense, a waiver under the court rules. I think the right way to do it, if you're in federal court applying Section 3, is to say at that point you've defaulted because it's clear you have to raise arguments at the trial court. You can't wait until appeal to raise arguments. So you're in default of the legal rules that require you to raise arguments in a timely fashion. But as a general matter, in the federal courts, if there's a motion that's not subject to a specific deadline, how do courts deal with that? If there's no specific deadline, they generally, if the opposition to the motion is, hey, you should have filed that sooner, the courts will generally look to considerations that include whether there's prejudice to the other side, and in the absence of prejudice to the other side, in the absence of a clear deadline, they will allow you to make that motion. That's certainly how motions to amend Rule 15 work. It's how Rule 24 motions to intervene work. So I think the right way to look at this is as a matter of federal law in applying Section 3. And my friend wants to make all of this an anterior inquiry into state law under Section 2, and with respect, I think that's almost exactly backwards. Mr. Clement, before you get into that, though, and I welcome that, but you said something I just want to make sure I understand. I think you said that in the absence of a specific deadline in the federal rules, courts require some prejudice before denying somebody an opportunity. Is that right? I mean, can't there be waiver? I intentionally relinquish something of a known right, no deadline, no prejudice required there. You lose, that's it, case moves on. You lose that right to make that motion. I think in cases of true intentional relinquishment of a right, I think that's generally true in the federal courts. Okay, okay, if that's true, if that's true in the federal courts, then didn't the Eighth Circuit err by, you know, you're going to argue, and I grant you, you've got a good argument that there's no intentional relinquishment here, but to the extent that it was purporting to apply doctrines of waiver, it erred in its formulation of that rule, didn't it? I don't think it really erred. I think it did what every circuit court in the country has done and this court has done on occasion, even since contract against Ryan and Justice Ginsburg tried to warn us about being careful about forfeiture versus waiver. They used the word waiver when they meant forfeiture. Okay, fine, fine. Whatever they did, they didn't apply what we've said a waiver is. A waiver is an intentional relinquishment of a right, the law. No more. Okay, and why couldn't we just send it back and say that? And you can make your argument that there is no waiver here because there's no intentional relinquishment. You can make your argument that this should be analyzed as a forfeiture. You can make all these Section 3 arguments about Iowa state law, but why couldn't we just clarify to the extent that the Eighth Circuit was purporting to interpret federal law, it was wrong about what's required to show waiver, period. Justice Gorsuch, if you really got to that point, I would suggest you probably should just dismiss the case as improvidently granted. Well, let's assume I don't do that. Okay, but I really think you should because the Eighth Circuit wasn't saying this is absolutely waiver and that's why we're applying this three-factor test. They applied the three-factor test, presumably, if you go back in their case law, as a gloss on the statutory phrase in default. And they said as a general matter, this is when it's too late to invoke your right to arbitrate. And we have a three-factor test, and the plaintiff in this case fails under the third factor. Importantly, they didn't even definitively resolve the second factor, which is the only thing that actually even goes to an inconsistency that possibly could get to an implied waiver. And there's not a hint in the decision that they thought they were talking about the explicit waiver that your question alludes to. Well, we're right on the same. I take it that their point is this. Imagine a contract with ten clauses, a state law contract. Clause 3 says, I will send you ten shirts by October 1. Clause 10 is an arbitration clause. Now, a defendant wants to say, they waived Clause 3. I don't have to send them ten shirts. They waived it. Okay? And I think they're saying, you could make the same argument about Clause 10, the arbitration Clause 2. It's no longer in the contract. They waived it. That would be a question of state law if it were shirts. Why isn't it a question of state law under Clause 10, which is the arbitration clause? They want to make that argument first. And that's what you were about to ask. Yeah, okay. So why can't they do that? Because it actually gets it backwards. That argument doesn't come first, because the arguments that come first under Section 2 are arguments that go to the validity of the arbitration clause, or arguably whether this dispute is going to go for this. That's what it is. It's the waiving of the arbitration clause. Clause 10 was waived, and therefore there is no contract with Clause 10. That issue does not go to the formation of the contract, that kind of timing issue. And with all respect, Justice Breyer, you know this better than anyone, because your opinion in Howsam against Dean Witter says that those kind of questions about waiver and timing and estoppel and latches are questions for the arbitrator, as long as the arbitration clause itself is not being called into question as invalid. And to be clear, that is this case. If you look at Petition Appendix Page 21, the district court said that the parties, quote, do not dispute whether a valid arbitration agreement exists and whether this particular dispute falls within the terms of the agreement. So in those circumstances, Section 2 is not any longer an interior inquiry. What you do is you have a relatively streamlined inquiry under Section 3 in federal court, and you figure out, did this party default? Did they waive in the loose sense in which most circuits, I think, quite frankly, look to prejudice? Why is that a federal question? I mean, even supposing we stick to this question of are you in default, why wouldn't we look to state law on that the same way we look to state law with respect to many other questions about the enforcement or validity of particular contractual provisions? Well, Justice Kagan, there's two reasons I think it would be a federal law question. One, it's ultimately you're interpreting the timeliness of a federal motion under a federal statute in federal court. It seems like a federal question to me. The second reason, if I can just get both out. Well, but, I mean, it's about whether a contract is valid and enforceable, and that's a question that we basically, the FAA, you know, delegates to state law. With respect, I don't think that's the right way to think about this dispute. The arbitration agreement itself, as I just read, was undisputed below. There's nothing wrong with the arbitration agreement. If Ms. Morgan brings a new suit tomorrow based on something else that happened during her brief employment, we can invoke the arbitration agreement. The arbitration agreement is valid. Nobody questions that. That's the principal office of Section 3. Then, in those circumstances, when you don't have that kind of issue, and there is that agreement, and one of the parties is saying, I'd like a stay of this litigation so we can go have our agreed-upon arbitration, at that point I would think that you would want to have the federal courts. I mean, if you were, if the question was instead whether you were in default in the sense of whether you had violated a particular contract provision, that would be a question of state law, wouldn't it? It would, and it would be a question for the arbitrators. And the reason that federal courts, Judge Lynch has an opinion that we cite. I mean, I guess I'm wondering why it is that you would differentiate between something where it's like, are you in default because you're in violation of a contractual term, or are you in default because you've actually acted in a way that's completely inconsistent with various contractual terms? Like, those to me, I mean, they're different, but they're not different that seems as though it should matter with respect to what the law is. I actually think they're materially different in two dimensions. One is an issue of federal law based on what happened in federal court right before the federal judges. The other is a state law doctrine that you're importing from principles of what would apply if instead of a litigation issue, this were an issue about widgets. And I think Judge Lynch in the First Circuit had a very thoughtful opinion. We cite it when we go through all of the circuits that have moored their decision to Section 3. And she and other federal courts had wrestled with this issue in the wake of Howsam. Because before Howsam, all the federal courts had been doing these little prejudice waiver inquiries under Section 3 themselves. And since Howsam says questions of waiver and estoppel and timeliness are for the arbitrators, all the federal courts stopped and thought, should we still be doing what we're doing? And they all uniformly decided, yes, we should still do what we're doing because this is a very specific question about whether the litigation conduct that just happened in front of us in federal court is essentially so substantial that we're going to really think of stop the party from invoking their arbitration rights at a later stage in the case. Can I ask? Keep going, sorry. No, but I think they recognize that the only reason they get to make that decision instead of the arbitrators is because it's a federal question under Section 3 based on litigation conduct that took place in front of them. So suppose I agree with you that Section 3 in default is the right place to focus our analysis, but then why not, what's your problem with the D.C. Circuit's approach in the Zuckerman-Spader case which said, well, there's a presumption of forfeiture if you don't raise it by the first response of pleading and I think makes the point that delay alone is not prejudice, but delay is rarely alone. Delay usually entails some cost to the other side in terms of motions practice or discovery. What's wrong with that approach? Well, a couple of things are wrong with that approach, Justice Kavanaugh. First of all, it seems pretty unfair to my clients. There's a federal rule that says these are the things you have to raise in your first response of pleading, and this isn't in it. So I would say if you want to write an opinion in my client's favor and suggest to the Rules Committee that they amend the rules to give clear notice to parties, then I could live with that. But what about the reasoning by analogy, and I think I know what your answer is going to be to this, but we're trying to interpret under your construct what the term default means in a federal statute. And by analogy, venue objections, for example, need to be raised by the first response of pleading. And even if you say prejudice is required, I think the insight of the D.C. Circuit's approach was there usually is prejudice if it's not raised in the first response of pleading because of the cost of participating in motions practice or discovery. There's a lot there. Yeah, there's a lot there. So let me try to take it. First of all, the line most courts have drawn is not whether it's in the response of pleading, but the line they've drawn is whether there's been substantial discovery. That isn't the case here. I think that's a better line if you're going to draw a presumptive line, and I think that's true not just because it favors my client, but because that's the point at which you are imposing costs on the other side that very well might not have been incurred in arbitration where one of the characteristics is you don't have the same kind of extensive discovery. Wouldn't motions practice also be expensive? I don't think it's as expensive. And at the point of motions practice, this is where the other side has to share some of the responsibility here. And I think it's particularly evident in this case where they didn't just file a lawsuit. They filed a lawsuit asking for a nationwide collective action. Now, if they had filed a bilateral claim under the FLSA, and I don't have a time machine and I wasn't involved in the litigation, but I bet if they had filed an in-court complaint bilaterally under the FLSA, my client would have invoked the arbitration clause immediately. But they asked for a nationwide collective action when there was already another putative nationwide collective action out there. Even if that one was limited to Michigan, this complaint purported to be a nationwide collective action that covered everybody in Michigan. Well, couldn't all that be resolved on remand? In other words, we set forth a standard of Section 3, and you can figure out exactly what happened in this case on remand. You don't... That seems kind of tough on my client, given the way I would read in default is that you defaulted on some legal obligation based on the rules as they exist. But, Mr. Clement, let me just interrupt there for one second, because Section 4 defines default as failure, neglect, a refusable, another to arbitrate. So you're talking about default in response to Justice Kavanaugh as a breach, but why wouldn't we look to that language, which doesn't require prejudice? Well, I think it does actually would require prejudice. I think you could have the same inquiry under that. I mean, I think that you would still have to... You'd still have some concept of material failure or neglect seems to me to have kind of a prejudice inquiry built in. But even if you go back and look at the definition of those terms, which I did, like neglect in a legal context is neglect of a legal duty. And I just think the question here is, what's the legal duty that my client violated or is in breach of? It seems a bit made up, Mr. Clement. I'm sorry? It seems a bit made up, this definition of default that you have. I mean, you say that there are certain things that count as default, missing an explicit deadline. But, you know, where are we getting this from? We're not getting it from Section 4. We're not getting it from any other part of the FAA. Where does this federal common law rule come from as to what counts as default? I mean, Justice Kagan, look, I'll take the characterization that it's federal common law, but I think it's federal common law when you're just making it up. I mean, I think this is just... It seems a little bit just making it up because you're drawing a line and what you're putting some things on one side of the line and then you're saying, well, you don't default if you act inconsistently with your contractual rights. Well, I don't know. Maybe, but there are a bunch of states that say you do default when you act inconsistently with your contractual rights, regardless whether you've missed an explicit deadline. I mean, it just seems as though default is a kind of complicated concept and you have one definition, and why should we accept it? Where is it coming from? It's a gloss on the statutory phrase in default, and I think everybody agrees default means you violated a legal obligation. Could you do this? I mean, suppose this came to us out of the rules instead of FDA. I mean, I would be tempted, perhaps wrongly, but tempted to say the following. They waited a long time, okay? Now, that might be too late for them now to ask. Whether it is, is, one, a question of whether they clearly and clearly stated we waive it or we don't want it or the equivalent. But if they haven't said that, then you try to look to see how much prejudice are there or other relevant circumstances. This is primarily a matter for the trial judge to decide. That's the one who should decide it. And if our standard, which I just said, is too vague, the rules committee can fix it up. But if I tried that in this case, there is no rules committee to fix it up. So what do I do? Well, I think the way, I mean, I don't really have much of a disagreement with what you just said other than, I think it's a mistake to try to be too deferential to the trial court in this context. Yeah, the other mistake is we create all kinds of rigid rules that apply well in some cases and terribly in another. I don't think there's been a problem. The vast majority of the circuits have done something relatively similar to what you're saying. They basically say, look, have you done something, did you know about the arbitration agreement, step one. Step two, did you do something inconsistent with it? Now that's where your consideration of, if you said, I don't ever want to arbitrate, I hate that stuff. Okay, that's really inconsistent. If here, as in here, all you did is you waited a while and you filed a couple of motions, that's either not inconsistent, the Eighth Circuit didn't even resolve that issue here. But that's either not inconsistent or it's certainly not inconsistent in the way that you were talking about. And then the third factor is, is the other side materially prejudiced? And that all, to me, makes sense. It's been workable. The reason I don't think you want to be too deferential to the lower court is the one benefit of making this a federal question is that through appellate review and maybe some case down the road where there's a circuit split as to the meaning of prejudice, this court could provide some guidance to make sure that the system is working. Mr. Clement, the problem I have with your answer for Justice Breyer is that the essence of the agreement here is to not be in litigation. Now, you can argue the petitioner by filing a claim in court. She herself has waived it. So the fact that I waive it just evens out. I understand that argument. But the question becomes, did you know that you had the right to arbitration? And here, you knew. Nevertheless, you didn't move for arbitration in the answer as a defense. You made a motion to transfer the case. When that motion was denied, you indicated the willingness to continue in litigation and went into settlement talks, and actually there were materials produced. By its nature, there was a delay in the speedy adjudication of the case because you didn't move to begin with to go to arbitration. So that's delay, something that was negotiated for. And the cost is the cost that Justice Kavanaugh said, an unnecessary motion, an unnecessary type of settlement agreement. Arbitration settlement agreements rarely require the production of materials. They just require talking. So having said all of that to you, the reason you waited was because you wanted to see how the court, by your own admission, you wanted to wait to see if the court was going to approve of class actions in arbitration. So you were taking a calculated risk by staying in litigation. Why isn't that a waiver under Section 6? Why isn't that a waiver under any normal definition? It prejudiced the other side. It hurt them, at least financially. It hurt them in delay. And you intentionally sat on your rights, waiting to see if you could derive a benefit. So explain to me, unpackage it, but tell me why isn't that not a waiver as an intentional right, an intentional relinquishment of a known right? So Justice Sotomayor, first, I don't think you get a lot out of the idea that it was intentional. I mean, because here's why. There are a lot of situations. I mean, if, for example, my client had thought that there was a personal jurisdiction problem with this lawsuit, they would have been obligated under the rules to make that their first motion out of the box. Now, they would have intentionally been doing that because they would have been saying, this isn't the right court for this litigation. And oh, by the way, Justice Kavanaugh, all of the things in the federal rules that say you have to put this in the first response to pleading are really going to the idea that this is just not the right federal court for this to be in. And so it's not just transfer of a venue that's in there. It's improper venues. You filed this lawsuit in the wrong place. That's not this case. But getting back to the rest of the answer, I think what the parties bargained for here was not just arbitration, but bilateral arbitration. And when the other side decides not just to violate the arbitration agreement, but to seek a nationwide collective action, I think my client is perfectly within its rights. And it's what I would advise my client to do under the circumstances is don't make a motion to compel arbitration because you might get a motion to compel nationwide collective arbitration. And pretty much every defendant on the planet agrees that's the worst of both worlds. So you wait. And then once it's clear that silence and ambiguity, which, by the way, are about the same thing, can't cause you to end up. Mr. Clement, you could have raised it in your motion to compel arbitration, as did the attorneys who came before us whose case you were waiting on. They made a motion to compel bilateral arbitration. And when the district court ordered class-wide arbitration, they brought it up to the Supreme Court. You could have followed the same protective measures. I suppose we could have. And with the benefit of that additional advice, maybe that's what I tell my clients to do. But I'd still say, okay, at worst, we failed to make a motion. At worst, we're in the realm of forfeiture. And we still have the ability to make this motion under Section 3. And generally speaking, in the absence of absolute total waiver, which this case doesn't involve,  then what the courts do is say, well, was the other side prejudiced? No? Okay. We're going to hear this motion. And if I could add sort of one piece to this in terms of kind of explaining how all this fits together, I think the design of Section 3 is to keep this inquiry relatively simple. And in a case where it's a valid arbitration agreement and it's an employment dispute within the bounds of that agreement, if there is an arbitration agreement, get it out of federal court quickly and have a narrow inquiry based on what happened in federal court. And then if there isn't the kind of prejudice that would cause those courts to deny other motions as untimely, then at that point, send it to the arbitrators. The other side can still raise these contract theories that if this were a contract for widgets, you would have waived it or stopped or you're too late. They can still waive those arguments in front of the arbitrator, which is where all of these complicated issues of Iowa law ought to be if they're not going to be in Iowa court. And, of course, the party is great to arbitrate. So they should be before the arbitrators. One other point about your- Mr. Clement, if I could just get it out of federal court quickly, you said. But the way the system is now working, and I want to extract a little bit from the facts of this case. I realize you have this class bilateral issue going on. But put that aside, irrespective of that. What's happening here is that courts are saying you need to have prejudice in order to waive. And then they're saying there's no prejudice simply from motions practice. You have to get into discovery to have prejudice. And what that leads to is why wouldn't anybody test the waters in federal court and see if they can get the case dismissed, and only if they can't say, okay, now I'm going to rely on my arbitration agreement, and let's go to arbitration. So it's like two bites at the apple. There's no incentive for anybody to go to arbitration fast, or there's no incentive for the defendant. The defendant says, I have like this free pass to litigate for a while, and then only then go to arbitration. So with respect, Justice Kagan, I don't think it's a free pass because courts- that you know you're going to get a free pass. And even if you do, there's still the possibility the other side could say that's still a waiver under state law and an issue for the arbitrator. So if you're advising clients, I think what you would probably say is there's a difference between motions practice that goes to the merits and motions practice that doesn't. But even then, I really would draw the line at discovery, because sometimes you have a situation where you've got to file a motion to dismiss, and you have some merits arguments, you have some jurisdictional arguments. You're allowed to put both in there. And also keep in mind, there's a wide range of cases that can be quite complicated. I mean, this case is but for the collective action piece. It's relatively straightforward. But sometimes you have these issues, like under Arthur Anderson, where you've got to figure out whether there's a party to the litigation who's not a party to the arbitration. And how does all of that fit out? And how does that sort out in terms of when you should make these various motions? And so I do think the line that the lower courts who have been dealing with this have drawn is the line about discovery. And even there, I think the real difference is whether you're taking depositions, because you probably couldn't get those in arbitration. But one last thing as to Justice Kavanaugh's point, because part of the problem is just all of a sudden make it kind of retroactively. This arbitration motion is part of 12-H-1. I mean, the way I would look at that is those motions that you have to raise in your first pleading, they all go to the court's jurisdiction, so it's sensible. But to take something that doesn't go to that court's jurisdiction and put it in there, I would describe that loosely as disfavoring arbitration. And I don't think that's what you're supposed to do in interpreting the FAA. And I do think in getting the incentives right here, you can't ignore the incentives of the party that first defaults, that first violates the arbitration agreement. I mean, if you err entirely on saying, boy, that defendant, they have to raise that thing in their very first pleading. That is going to make more parties who are plaintiffs say, well, you know, the defendants are kind of in a box, because I've been thinking about this litigation for six months. I've picked my lawyer. I've refined my theory. I've not only picked the district, I've picked, like, the division within the district. I've done all of that thinking for six months. And even though I agreed to arbitrate, boom, I'm going to hit the defendant with the lawsuit. And then the defendant, who thought he had an arbitration agreement, and also thought, as in this case, that there was a pre-filing notification requirement in the agreement, is getting hit with this lawsuit out of the blue. They have to find a lawyer that they didn't know they needed to get, maybe get local counsel as well, figure out what's going on in the case, figure out whether there are other additional parties to the case who aren't parties to the arbitration agreement. They've got to figure all that out. I don't know why, if you're trying to get the incentives right in a statute that's pro-arbitration, that you would put that defendant on what amounts to an invisible clock, because it's not in 12-H-1 now, and say, all right, you've got to bring it in that first plea hearing. You're out of luck. Thank you, Counsel. Justice Breyer, anything further? Justice Alito? Justice Sotomayor? Justice King? Justice Gorsuch, anything further? Just one thing. You, in your briefs, rely on Rule 15 as the proper analogy, and I just wanted to give you an opportunity to explain how you think that works and applies here. In other words, an amended response of pleading and Rule 15 allows that under a very vague standard, but you say prejudice is part of that standard. I just wanted you to elaborate on that. Sure. Justice Kavanaugh, I appreciate the opportunity. I think we sort of rely on Rule 15 by analogy. I actually don't think the law in the circuits is that in order to file a motion under Section 3, you have to have arbitration as a defense in the answer. So I think in most cases they kind of collapse that inquiry. But even if you thought that was required, and this is why I think the difference between arbitration, which isn't a 12-H-1 must-raise defense and other defenses is important. If you could think about this, okay, let's say we had to add it in the answer as a preliminary step to filing this motion. We're past the point where we get to amend as of right, but this is one of the many things in the federal rules where you have like an ability to make a motion, but there's no strict deadline. And so the way the courts would figure out whether it's too late to amend your complaint to add arbitration would be to essentially say, well, the presumption is leave is freely granted, but we withhold it in certain circumstances and we look to prejudice. In fact, cases like Foreman, which we cite in our brief, say that prejudice is more or less the most important factor. Similarly, in sort of contract against Ryan is another case where this court was dealing with forfeiture issues and kind of talked about the same principle. Prejudice is an important part of that inquiry. That's why it seems anomalous to say that in this situation we would discharge the prejudice inquiry altogether. Justice Barrett? One quick question. So let's say that we agree with you. This is a Section 3 question. It's a matter of federal common law. Would you agree that it's not really a question of waiver? So insofar as the courts of appeals have classified it as waiver, that really ought to be considered a kind of estoppel or latches, and so as a matter of federal common law we should clarify that? I think that would actually be helpful. Because really if you look at these cases, virtually all of them do not involve the situation that Justice Gorsuch hypothesized of somebody coming in and saying, I never want to litigate. I mean, I never want to arbitrate. I just want to litigate, and then coming in the next day and trying to retract it. Almost all of these cases involve the argument that the other side waited or litigated too long, and that really is thought of as an issue of latches or estoppel. I guess the only hesitation I would say, though, is at the same time that you clarified that, I would also say, but it's not an issue of state law. So you don't have to, like if Iowa has a really funky law of latches or estoppel, you don't have to go apply that. You just have to apply federal law. The federal common law would recognize that this is really more like an issue of latches or estoppel, and therefore would have prejudice as an important part of the inquiry. But if you did something like filing a counterclaim, that might be waiver, intentional relinquishment. You've submitted your own dispute in an offensive way to the district court. I would hesitate to say that in this opinion because, like, for example, what if I raised arbitration as a defense, raised a mandatory counterclaim as well, and then the next day asked for arbitration? That doesn't seem like a waiver. And I don't think, you know, you can think about this as, like, it's not exactly like an 11th Amendment case where the whole point is that a state has a right not to be in federal court against its will. So if it files a counterclaim or removes to federal court, well then, boom, a trap door opens. I don't think this is quite the same thing. I think it needs to be a little more flexible in that precisely because of the circumstance I hypothesized, where I have to, you know, I've got to file an answer, I've got a mandatory counterclaim, but I also in the next breath am saying this should be arbitrated. Thank you. Thank you, counsel. Rebuttal, Ms. Gilbride. Just a few points in rebuttal. There's no place for a prejudice requirement, even if this court does analyze the question under Section 3. If you look at the structure of the FAA over and over again, you see indications that things should be done in a summary manner. The word summarily appears twice in Section 4, summarily to the trial. The judge will summarily send the parties to arbitration. Section 16, the fact that you have an interlocutory appeal, if there's a refusal of a request for a stay or denial of a motion to compel, but not if it's granted or if the stay is. So basically the idea, as this court said in Prima Paint, is that once the parties select arbitration, it must be speedy and not subject to delay and obstruction in the courts. The current status quo that requires prejudice and requires the party asserting waiver to show prejudice results in delay and obstruction in the courts over and over again. And Sundance, my friend here, wants the standard to be substantial participation and discovery. The Second Circuit in Rush v. Oppenheimer talks about participation and discovery and says the party asserting waiver has to show that the particular information the other party sought and obtained could not have been obtained in arbitration. So they have to go piece of information by piece of information and say, could the party have gotten that same information in arbitration? And that's all taking place in the courts before anyone goes to arbitration in the first place, pre-arbitration skirmishing. Motions practice was discussed. Another case applying the prejudice standard is the Third Circuit in Wood v. Prudential Insurance Company, cited in the state's amicus brief, talks about a motion to dismiss was filed, the case was partially dismissed, and the party asserted waiver. The district court said, well, we don't know that the arbitrator wouldn't have decided that motion to dismiss differently, so you can't prove that you were prejudiced by the court deciding it in the first instance. So, therefore, license for parties to seek two bites at the apple, exactly the problem that, Justice Kagan, you were describing. So you ask Justice Kagan, where does this prejudice inquiry come from? Because it's not anywhere in the text. Where the courts got it from, if you look through the way this doctrine developed, was this idea of the liberal federal policy favoring arbitration. Because if you look at the early cases, the radiator specialties case in 1938 applying Section 3, it just talks about the party being dilatory and that Congress did not intend for a Section 3 applicant to be dilatory. Unilateral, no discussion of prejudice. Where prejudice came in, starting with the Carthage case in the Second Circuit and then the Carolina throwing case in the Fourth Circuit, was this idea that because arbitration is involved and there's a liberal federal policy favoring arbitration, we need to raise the bar. We need to make it harder to waive arbitration than other contractual rights. But this court has repeatedly said in Hall Street Associates v. Mattel and in Granite Rock v. International Brotherhood of Teamsters that the liberal federal policy favoring arbitration is just another way of codifying Section 2's equal treatment principle. That because Congress was reacting to a situation where courts were hostile to arbitration, treating arbitration clauses like any other contract meant removing that hostility. And that was a pro-arbitration policy codified in the statute. And so that brings us back to Section 2 where we started. That as this court has clarified, contract offenses need to be generally applicable. This is not a generally applicable contract offense that the courts are applying. And that violates the centerpiece of the FAA, which this court has found in Section 2 dating back to Shirk v. Alberto Company in 1974 and reiterated in the GE Energy Power case in 2020. That is codified in Section 2, and it's not just about preemption. It's not just about the saving clause. It is the centerpiece of the FAA. That contracts to arbitrate will be treated like any other contract. And as this court said in Prima Paint, that Congress's intent in enacting the FAA in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so. The Eighth Circuit applied an arbitration-specific waiver doctrine at odds with generally applicable Iowa contract law, and that necessitates remand for the proper inquiry, which, whether it's under state law, federal law, or both, should not involve a prejudice requirement. Thank you, Counsel. The case is submitted.